IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GEORGE ABILA,

    Plaintiff,

v.                                                No.

SHAUN FUNK and LEZLIE DUCKETT.

    Defendants.

## COMPLAINT FOR THE RECOVERY OF DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS AND TORTIOUS CONDUCT

Plaintiff brings this complaint for damages caused by the violation of his civil and constitutional rights. Plaintiff files this complaint under the Federal Civil Rights Act, the New Mexico Tort Claims Act, and the Constitutions of the United States and New Mexico. In support of this complaint, Plaintiff alleges the following:

## JURISDICTION AND VENUE

1. Jurisdiction over the subject matter is conferred by 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988.  Venue is proper as the acts complained of occurred exclusively within Eddy County, New Mexico.

## PARTIES

2. Plaintiff, George Abila, is an individual and former resident of Eddy County, New Mexico.

3. Plaintiff is not is custody at the time of the filing of this complaint.

4. Defendant Shaun Funk at all material times was the warden of the Eddy County Detention Center (hereinafter "ECDC") and is sued in his individual and official capacities.

5. Defendant Funk was acting under the color of state law and within the course and scope of his employment at all material times.

6. Defendant Lezlie Duckett at all material times was the nurse practitioner in charge of health care at ECDC and is being sued in her individual capacity only.

7. Defendant Duckett was acting under color of state law and within the course and scope of her employment at all material times.

## FACTUAL BACKGROUND

8. Plaintiff, George Abila, in late 2011 through the middle of 2012 was an inmate in the Eddy County Detention Center.

9. As a result of his incarceration, Plaintiff became depressed to the point of attempting to commit suicide.

10. Plaintiff's severe depression was obvious and required mental and medical treatment.

11. Defendants treated Plaintiff's depression by placing him in solitary confinement for months forcing him to sleep on his cell floor, taking away his recreation time out of his cell, forcing him to use a hole in the floor as a toilet and only allowing him to shower every two to five days.

12. In January 2012 after being placed in solitary confinement, Plaintiff was placed in shackles while in his cell and only allowed to have one hand free to eat.

13. Plaintiff was not allowed underwear or socks while being held in solitary confinement.

14. As a result of inadequate clothing and bedding, Plaintiff developed sores from sleeping on the cell floor for months.

15. During the first month of being held in solitary confinement, Plaintiff was moved to a padded solitary cell.

16. This cell did not have a bed, did not have a toilet and did not have running water.

17. Plaintiff only had a square hole in the floor covered with a grate to use as a toilet.

18. Plaintiff was forced to use this hole to urinate and to defecate into.

19. When Plaintiff would defecate into the hole the feces and toilet paper would get caught forcing him to manually push the feces and feces covered toilet paper through the grate and into the hole.

20. Without any running water Plaintiff could not wash his hands.

21. Plaintiff's cell was extremely cold and he was not given adequate clothing or blankets to keep warm.

22. The light in Plaintiff's cell was left on twenty-four hours a day making sleep difficult.

23. According to Defendants records, Plaintiff was moved between two solitary cells following his last attempt to harm himself on December 25, 2011, cell 169 and 166.

24. Plaintiff was never given an administrative review of his conditions of confinement at any point while being held in solitary confinement.

25. On January 5, 2012 Defendants acknowledge and admit that the lights were on "all the time" and that Plaintiff "can't rest".

26. At this time Plaintiff was not a danger to himself or others in the jail.

27. In fact, Defendant Duckett noted on January 9, 2012 that Plaintiff was calm and cooperative.

28. Despite these facts, a health care worker at ECDC noted on January 9, 2012 that "It has been decided he [Plaintiff] will stay in 169 for the duration of his time at ECDC."

29. This decision was made by Defendants Funk and Duckett.

30. For someone to be placed in solitary for a length of time requires the knowledge and authorization of Defendant Funk.

31. For someone to be placed in solitary for a length of time requires the knowledge and authorization of Defendant Duckett.

32. The decision was made to keep Plaintiff in solitary confinement indefinitely as punishment towards Plaintiff.

33. Plaintiff's mental health deteriorated during the six to seven months in solitary confinement.

34. Plaintiff would frequently be observed pacing his cell.

35. Plaintiff would refuse to talk to the jail counselor and would often cover his head with the "suicide" blanket the jail provided him.

36. At times Plaintiff was observed lying on the floor covering his head with the "blanket".

37. At other times Plaintiff would be observed standing at the door of his cell and wouldn't make any eye contact with anyone.

38. After approximately two months, on March 8, 2012 of being placed in solitary confinement Plaintiff's mental health deteriorated to the point where he pulled off his own toe nail.

39. Rather than obtaining mental health treatment for Plaintiff, Defendants merely observed, noted and ignored Plaintiff's deteriorating mental health resulting from his prolonged incarceration in solitary confinement.

40. One example of this was on March 12, 2012, Defendant Duckett noted that Plaintiff had refused to be seen and Duckett's only response was "attempt to meet with [Plaintiff] next month."

41. Plaintiff at no time was physically aggressive towards any staff members, but as a result of his solitary confinement, Plaintiff did at times yell obscenities at them.

42. In late March 2012, the sores Plaintiff was getting from sleeping on the floor for several months were painful and obvious.

43. Despite this Plaintiff was not allowed a daily shower to keep his wounds clean.

44. On March 31, 2012 medical issued a request to "please allow George Abila to have a daily shower to keep his sores clean."

45. Despite this request, Defendants still did not allow Plaintiff out of his cell for a daily shower.

46. Additionally, as a result of sleeping on the cell floor for months, Plaintiff experienced severe hip and shoulder pain.

47. In late May 2012, the medical staff indicated that they would speak with Defendant Funk about allowing Plaintiff to have a mattress to sleep on because of the pain being caused by sleeping on the floor.

48. On May 24, 2012, Plaintiff began to complain in writing directly to Defendant Funk.

49. Plaintiff asked Defendant Funk if he could be moved from solitary confinement.

50. Plaintiff told Funk that he was informed he would be allowed out of solitary confinement, but since Plaintiff cursed at a staff member and told a staff member to relay to Defendant Funk to put an "orange where the sun don't shine" that he wasn't going to be moved.

51. Defendant Funk responded that Plaintiff "will remain on this protective status until you can comply with any and all lawful orders and directions and when you can treat staff with the same respect you are given."

52. On May 29, 2012 Plaintiff again complained to Defendant Funk about his conditions of confinement.

53. Plaintiff explained that he was supposed to be evaluated every two weeks and he was denied all recreation, canteen and clothing. He was not allowed to have socks or underwear and had been forced to sleep on the floor for months.

54. Plaintiff asked Defendant Funk for documentation as to why he was being held in the padded cell and about any problems he had caused.

55. Defendant Funk's only response was "already answered" referring to Funk's previous response.

56. Plaintiff submitted another similar complaint on the same day.

57. Defendant Funk responded this time by saying the reason Plaintiff was being held in the padded solitary cell was because he allegedly cursed and threatened Sergeant Voldahl, refused to follow orders given and disrupted the booking area.

6

58. Defendant Funk never mentioned any issues regarding suicide attempts as the reason he remained in the padded cell.

59. To Plaintiff's knowledge there are no reports indicating any threats were every made to staff at ECDC by Plaintiff and Plaintiff, in fact, did not make any threats towards staff members.

60. It is clear from Defendant Funk's responses the reasoning Plaintiff was placed in solitary confinement and remained in solitary was to punish Plaintiff and not for any safety reasons.

61. This punishment served no penological interest and was meant to harm, torture and demean Plaintiff.

62. Plaintiff's confinement in solitary at the direction of Funk was not unique to him.

63. Plaintiff heard from other inmates and guards at ECDC that Defendant Funk used the padded cell to punish inmates as a matter of custom and policy at the jail.

64. In June 2012 Plaintiff was transported to Roswell to address a misdemeanor charge pending in that jurisdiction.

65. Plaintiff was not placed in solitary and a padded cell was not needed to treat his mental illness.

66. Once transported to Roswell, NM, Plaintiff was placed in general population.

67. Plaintiff was advised at the Roswell facility not to resolve his misdemeanor case so he could remain in Roswell rather than be transported back to ECDC.

68. Plaintiff was eventually transported to the Department of Corrections (DOC) directly from the Roswell jail.

69. Again, in DOC, solitary confinement was not needed to treat his mental illness and he was placed in general population.

70. Plaintiff has been severely traumatized by the Defendants treatment of him during his incarceration at ECDC.

71. Since his release from ECDC, Plaintiff suffers from nightmares as a result of his confinement in ECDC.

72. Plaintiff continues to wake up at night in cold sweats believing he is still in the padded cell and going to die.

73. The images of the padded cell continue to haunt him and cause him to be depressed and anxious.

## COUNT I: VIOLATION OF SUBSTANTIVE DUE PROCESS: INHUMANE CONDITIONS OF CONFINEMENT/INADEQUATE MEDICAL CARE FEDERAL AND STATE CONSTITUTIONS

74. Plaintiff restates each of the preceding allegations as if fully stated herein.

75. Plaintiff has a substantive due process right under the Fourteenth Amendment to humane conditions of confinement and adequate medical care.

76. Plaintiff has a similar substantive due process right to humane conditions of confinement and adequate medical care under Article II Section 4 of the New Mexico Constitution.

77. Rather than treat Plaintiff's mental health condition, Defendants chose to place him in solitary confinement and allowed him to remain there untreated.

78. As detailed above, Defendants witnessed and were aware of Plaintiff's obvious mental health needs and horrific conditions of confinement on a daily and/or routine basis throughout her incarceration at ECDC.

8

79. Rather than treat Plaintiff's depression, Defendants used solitary confinement to punish and abuse him at ECDC.

80. Defendants were aware Plaintiff's conditions of confinement were inhumane.

81. Defendants knew or should have known that solitary confinement was harmful to mentally ill inmates.

82. While in solitary Plaintiff did not leave his cell for days at a time.

83. While in solitary Defendants failed to provide constitutionally mandated recreation time each day, such that Plaintiff did not go outside, or leave his cell.

84. In fact Plaintiff was only allowed to leave his cell for an occasional shower which usually lasted for ten to twenty minutes.

85. Defendants were aware Plaintiff's mental condition was deteriorating during his time in solitary confinement.

86. Defendants failed to take reasonable measures to prevent the harm being caused to Plaintiff which was worsened by the isolation of solitary confinement.

87. Instead, Defendants ignored Plaintiff's needs and punished him for the behavior he exhibited, such behavior being the symptoms of his deteriorating mental health caused by his isolation and lack of medical treatment.

88. This punishment included but was not limited to holding Plaintiff in a cell without running water, a hole in the floor to be used as a toilet, keeping the lights on in his cell for twenty-four hours a day for the entire time he was held, and not allowing him to have a mattress to sleep on in his cell.

89. Defendants knew Plaintiff faced a substantial risk of serious mental or physical harm if his conditions of confinement did not meet contemporary standards of decency.

90. Defendants acted with deliberate indifference to this risk.

91. Plaintiff's conditions of confinement amounted to punishment of a pre-trial detainee in violation of the Fourteenth Amendment to the United States Constitution and Article II Section 14 of the New Mexico Constitution.

92. Plaintiff suffered from an obviously serious medical condition which required immediate medical care.

93. Defendants' failure to provide medical care amounted to deliberate indifference in violation of the Fourteenth Amendment to the United States Constitution and Article II Section 14 of the New Mexico Constitution.

94. As a result of the foregoing, Plaintiff suffered damages and injuries including but not limited to pain and suffering, severe psychological and emotional distress, and humiliation.

## COUNT II: VIOLATION OF PROCEDURAL DUE PROCESS

95. Plaintiff restates each of the preceding allegations as if fully stated herein.

96. Inmates at ECDC generally have access to recreation, visitation, use of the phone, mail, programing services such as group therapy and religious activities and commissary.

97. While in solitary Plaintiff had no access to the ordinary services provided to inmates at the jail.

98. Plaintiff was not afforded a hearing before being placed in solitary confinement.

99. While in solitary confinement Plaintiff did not have access to the basic programming and services received by other inmates at the facility.

100. While in solitary confinement Plaintiff was refused telephone calls, mail, visitation, recreation, and commissary.

101. Plaintiff had a due process right to a periodic review of his classification.

102. In placing Plaintiff in solitary confinement for such a long period of time without affording him a hearing, or periodic classification review, Defendants denied Plaintiff procedural due process of law as guaranteed by the Fourteenth Amendment.

103. As a result of the foregoing, Plaintiff suffered damages and injuries including but not limited to pain and suffering, severe psychological and emotional distress, and humiliation.

## COUNT III: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

104. Plaintiff restates each of the preceding allegations as if fully stated herein.

105. Plaintiff is entitled to be free from discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

106. Defendant Funk failed to accommodate Plaintiff's mental disability and denied him the benefits and services of the jail by reason of his mental disability.

107. Plaintiff was denied social interaction by reason of his mental disability.

108. Plaintiff was unnecessarily segregated due to his mental disability.

109. Plaintiff was denied reasonable standards of hygiene and medical care due to his mental disability.

110. Plaintiff was denied the usual services and programming offered to other inmates due to his mental disability.

111. Defendant Funk was aware his jail would receive mentally ill inmates as a matter of routine.

112. Despite this knowledge Funk failed to hire the necessary mental health professionals to staff his facility.

113. Rather than provide the necessary mental health care to mentally ill inmates, Defendants elected to use solitary confinement as their method of treatment.

114. As a proximate and foreseeable result of Defendant Funk's discriminatory acts and omissions Plaintiff suffered injuries including but not limited to pain and suffering, severe psychological and emotional distress, and humiliation.

**COUNT IV: CUSTOM AND POLICY OF VIOLATING CONSTITUTIONAL RIGHTS**

115. Plaintiff restates each of the preceding allegations as if fully stated herein.

116. Defendant Funk is the final policy maker responsible for the hiring, training, and supervision of ECDC employees.

117. Funk's policies therefore become the customs and policies of the County.

118. Defendant Funk has created a custom and policy of housing the mentally ill in segregation or solitary confinement.

119. Funk has created a policy of isolating mental health patients when they become too difficult or expensive to handle, in general population.

120. Defendant Funk uses solitary confinement, specifically the padded cell at his facility to punish inmates.

121. In fact, Plaintiff heard from other inmates and guards at ECDC that Defendant Funk used the padded cell to punish inmates as a matter of custom and policy at the jail.

122. This policy of using a padded cell as punishment is facially unconstitutional.

123. Isolating and placing inmates with mental health issues in solitary confinement is detrimental to the health and well-being of inmates with mental health issues.

124. Defendant Funk knew of the harmful effects and dangers of solitary confinement on inmates with mental health issues, but disregarded those dangers creating a policy and custom of housing mentally ill inmates in solitary.

125. This policy and custom was a moving force behind the violation of Plaintiff's constitutional rights which amounts to deliberate indifference.

126. As a result of the foregoing, Plaintiff suffered damages and injuries including but not limited to pain and suffering, severe psychological and emotional distress, and humiliation.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts.

## REQUEST FOR RELIEF

WHERFORE, Plaintiff prays for judgment as follows:

1. Compensatory damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for emotional harm.

2. Punitive damages in an as yet undetermined amount severally against the individually named Defendants.

3. Reasonable costs and attorney's fees incurred in bringing this action.

4. Such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

  /s/ Matthew E. Coyte

MATTHEW COYTE P.C

Matthew E. Coyte
Attorney for Plaintiff
201 3rd Street NW, Suite 1920
Albuquerque, NM 87102
TEL:   (505) 244-3030

  /s/ Jack B. Jacks

LAW OFFICE OF J.B. JACKS

JACK B. JACKS
Attorney for Plaintiff
201 3rd Street NW, Suite 1920
Albuquerque, NM 87102
TEL:   (505) 463-1021