# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GEORGE ABILA,

       Plaintiff,

vs.                                              No. CIV 14-1002 JB/SV

SHAWN FUNK; LEXLIE DUCKETT; KAY
YOUNGMAN and TODD BANNISTER,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Jonlyn M. Martinez' Motion to Quash Subpoena, filed July 18, 2016 (Doc. 138)("Motion"). The Court held a hearing on August 26, 2016. The primary issues are: (i) whether Defendant Todd Bannister's March 24, 2010, deposition transcript in Roy Quiroz v. County of Eddy and its Board of Commissioners, et. al., No. CIV 09-0311, in which the predecessor law firm of Jonlyn M. Martinez, who is not a lawyer in this case, represented Bannister, constitutes Ms. Martinez' work product that is protected from Plaintiff George Abila's discovery; (ii) whether production of Bannister's deposition would be unduly burdensome to Ms. Martinez; and (iii) whether Ms. Martinez' production of the deposition would violate the New Mexico Rules of Professional Conduct. Because the Court concludes that the deposition is not work product, that its production would not be unduly burdensome, and that Ms. Martinez' production of the deposition would not violate the New Mexico Rules of Professional Conduct, it will order the deposition's production. The Court will thus deny the Motion.

## FACTUAL BACKGROUND

Abila brought this suit against Defendant Shawn Funk and Bannister for their alleged

failure to provide him medical care during his detention at the Eddy County Detention Center. See Third Amended Complaint for the Recovery of Damages Caused by the Deprivation of Civil Rights and Tortious Conduct, filed March 17, 2016 (Doc. 102)("Third Amended Complaint"). The Court draws its summary of the relevant facts giving rise to the present dispute from Abila's Third Amended Complaint, and from his Plaintiff's Motion and Memorandum in Support of Summary Judgment for Inhumane Conditions of Confinement, filed September 6, 2016 (Doc. 138)("Plaintiff's Motion for Summary Judgment").

Abila was booked at Eddy County Detention Center on August 8, 2011, and housed in general population. See Complaint ¶ 15, at 3. About a month later, on September 6, 2011, Abila swallowed a razor blade. See Complaint ¶ 24, at 3. On October 24, 2011, he cut his arms with a razor blade which needed stitches at the hospital. See Complaint ¶ 29, at 4. Although housed in isolation after the incident, on November 12, 2011, Abila again cut his arms and needed medical attention and stitches. See Complaint ¶¶ 33, 41, at 4-5.

Abila was then ordered to be housed in padded cell 166 upon his return from the hospital. See Complaint ¶ 29, at 4; Plaintiff's Motion for Summary Judgment ¶ 8, at 3. Padded cell 166 had no furnishings, sink, or mattress -- it contained only a grated hole on the floor for defecation and urination. See Plaintiff's Motion for Summary Judgment ¶ 8, at 3. During transport to padded cell 166, Abila pulled out his stitches and was again taken to the hospital. See Plaintiff's Motion for Summary Judgment ¶ 9, at 3. Upon Abila's return to Eddy County Detention Center, Bannister ordered that Abila be placed in a restraint chair within padded cell 166 -- and to continuously remain restrained in some manner -- for nineteen days. See Plaintiff's Motion for Summary Judgment ¶ 11, at 4. Abila's wrists developed sores from the restraints. See Complaint ¶¶ 43, 46, at 5; Plaintiff's Motion for Summary Judgment ¶ 19, at 5.

On December 24, 2011, Abila, while in his cell, swallowed screws and plastic.  <u>See</u> Complaint ¶ 51, at 6.  Abila was put on a fifteen minute watch -- instead of being taken to the hospital -- until he started coughing up blood.  <u>See</u> Complaint ¶ 52, at 6; Plaintiff's Motion for Summary Judgment ¶¶ 16, 17, at 4.  He remained at the hospital until January 2, 2012, and, upon his return, he was placed in padded cell 169.  <u>See</u> Complaint ¶¶ 52-54, at 6; Plaintiff's Motion for Summary Judgment ¶¶ 19-21, at 5.

Padded cell 169 also did not have furnishings, a sink, or a mattress.  <u>See</u> Plaintiff's Motion for Summary Judgment ¶¶ 20-21, at 5.  Like padded cell 166, padded cell 169 similarly contained a grate in the floor for defecation and urination.  <u>See</u> Plaintiff's Motion for Summary Judgment ¶ 21, at 5.  Abila was ordered to stay in padded cell 169 for the duration of his detention at Eddy County Detention Center, but the requisite physician's order was not obtained.  <u>See</u> Complaint ¶¶ 56-58, at 6; Plaintiff's Motion for Summary Judgment ¶¶ 32-36, at 7.  Abila stayed in padded cell 169 from January 3, 2012, until June 21, 2012, and did not receive recreation until June 10, 2012 -- 159 days after he was placed into padded cell 169.  <u>See</u> Plaintiff's Motion for Summary Judgment ¶¶ 43, 48-49, at 8-9.

## PROCEDURAL BACKGROUND

Abila's counsel, in the normal course of discovery to support his lawsuit, deposed Defendant Todd Bannister.  <u>See</u> Response to Motion to Quash Subpoena at 1, filed August 3, 2016 (Doc. 144)("Response").  Bannister testified that he had, in a different matter, been deposed before.  <u>See</u> Response at 1.  He also testified that the prior deposition was not in connection to a case in which either he or Eddy County Detention Center were defendants, and its subject matter was not the failure to provide medical care or conditions of confinement.  <u>See</u> Response at 1.

1.   **The Motion to Quash Subpoena**.

Abila's counsel had served on Ms. Martinez a subpoena requiring her law office to produce a transcript of the Bannister deposition.   See Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, filed July 18, 2016 (Doc. 138-1)("Subpoena").   Ms. Martinez objected to the subpoena's command by filing the Motion.  See Motion at 1.  In the Motion, Ms. Martinez first argues that the Court should quash the subpoena, because under rule 45(d)(1) of the Federal Rules of Civil Procedure, "an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."  Motion at 2.  Ms. Martinez claims that counsel for Abila -- to harm "the very client the undersigned's former law firm was retained to represent" -- is seeking to discover files that her law firm has maintained for the past six years.  Motion at 3.  That demand, she argues, constitutes an undue burden.  See Motion at 3.

Ms. Martinez next argues that the New Mexico Rules of Professional Conduct forbid her from producing the deposition transcript, because such production would "create a conflict between the undersigned and her former client by attempting to use her file materials to harm Defendant Bannister [] for the benefit of the Plaintiff in the current action."  Motion at 3.  Ms. Martinez relies on rule 16-109(C)(1) NMRA, which disallows a lawyer's use of information relating to her representation of a former client to that former client's disadvantage.  See Motion at 3.

In her Motion, Ms. Martinez next characterizes the deposition transcript as work product prepared in anticipation of litigation by or for a party or its representative.  See Motion at 3-4. She argues that the deposition transcript, by virtue of being work product, is immune from

discovery.  See Motion at 3-4.  Additionally, in closing, Ms. Martinez indicates that she is not the only custodian of the deposition transcript and that "permitting a Plaintiff to subpoena file materials from a Defendant's former legal counsel is a dangerous precedent. It allows a Plaintiff to forego conducting discovery and instead subpoena all file materials in an attorney's possession concerning a former client."  Motion at 4.  She thus requests that the Court quash the subpoena.  See Motion at 4.

      **2.**   **The Response to Motion to Quash Subpoena.**

In response, Abila's counsel provides the relevant factual background to this case which makes the prior deposition transcript relevant.  See Response at 1-3.  Abila's counsel argues that Bannister's testimony in that deposition is "crucial in proving the untruthful nature of his recent sworn testimony."  Response at 1.  Because, in another similar matter, Bannister was deposed and has allegedly now lied about the circumstances surrounding that similar matter, Abila's counsel now argues that the record of the prior deposition is relevant and necessary to impeach Bannister's current deposition testimony.  See Response at 1, 3.  Abila's counsel contends that, after seeking the deposition transcript from both the plaintiff's attorney and court reporters in the prior case to no avail, the last resort is the transcript in Ms. Martinez' file.  See Response at 3.

The Response first addresses Martinez' argument that the deposition transcript is work product by arguing that work product is "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and other similar materials created in anticipation of trial."  Response at 4 (internal quotation marks omitted).  Abila's counsel contends that because a deposition does not fit into those categories, and because it is sworn testimony taken in front of various parties -- such as opposing counsel and court reporters -- the deposition transcript at issue in this case is not work product and is thereby discoverable.  See Response at 4-5.

Abila's Response next notes that the production of the deposition transcript would not be burdensome, as it is apparent that it is readily available within Ms. Martinez' files.  <u>See</u> Response at 5.  Abila's counsel maintains that because she evidently has the deposition transcript in her possession, all it would take is an email for her to comply with the subpoena and that effort does not constitute an undue burden.  <u>See</u> Response at 5.

Lastly, the Response argues that Ms. Martinez' compliance with the subpoena would not implicate the New Mexico Rules of Professional Conduct, because its production meets an exception for the "use [of] information relating to the representation to the disadvantage of the former client" -- that exception allowing use of the information "as these rules would permit or require with respect to a client."  Response at 5.  Abila's counsel contends that, considering that the rule referenced by Ms. Martinez was developed to protect clients from corruption by lawyers serving as their fiduciaries, this matter falls outside of the rule's scope.  <u>See</u> Response at 6.

### 3.   <u>The Reply to the Response to Motion to Quash.</u>

In her Reply to Response to Motion to Quash, filed August 17, 2016 (Doc. 145)("Reply"), Ms. Martinez provides that, in her capacity as a regular lawyer for Eddy County and its employees, she maintains many file materials for and in anticipation of future litigation. <u>See</u> Reply at 2.  She argues that "even the generic prospect of litigation may be enough" to qualify certain file materials as work product and that the requested deposition transcript meets this classification.  Reply at 2.

She then reiterates her argument that production of this deposition transcript would be an undue burden, because, she argues, "[i]t requires the undersigned to produce materials from her confidential files for use by a Plaintiff against one of her former clients," and the transcript is essentially irrelevant.  Reply at 2-3.  Last, with respect to the New Mexico Rules of Professional

Conduct, Ms. Martinez again argues that production in compliance with the subpoena would disadvantage her former client, a clear violation of the Rules.  <u>See</u> Reply at 3-4.  She references the same rule, rule 16-109(C)(1).  <u>See</u> Reply at 3-4.

    **4.  <u>The Hearing</u>**

At the hearing, the Court provided that the deposition transcript appears to have some relevant information that would possibly be admissible in this case.  <u>See</u> Transcript of Hearing at 2:4-22 (taken August 26, 2016)(Court)("Tr.").[1]  Accordingly, it was inclined to deny the Motion, but suggested that a Court order to produce the deposition transcript would sufficiently protect Ms. Martinez from any possible charges that her former client might bring against her for complying.  <u>See</u> Tr. at 2:19-22; 3:4-11 (Court).  Ms. Martinez indicated that she had made her written record, and would comply with the subpoena should the Court disagree with her arguments and ultimately deny her motion.  <u>See</u> Tr. 3:2-3; 19 (Martinez).  The Court then told Ms. Martinez that it would deny her Motion and issue an order that required her production of the deposition transcript.  <u>See</u> Tr. at 3:4-11 (Court).

<u>**LAW REGARDING ATTORNEY WORK PRODUCT IMMUNE FROM DISCOVERY**</u>

The work-product doctrine, which the Supreme Court first recognized in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975).  "In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

parties and their counsel." <u>Hickman v. Taylor</u>, 329 U.S. at 510. "Unlike the attorney-client privilege, the work-product doctrine is distinguishable from the testimonial . . . privileges." <u>United States v. Ary</u>, 518 F.3d 775, 783 n.4 (10th Cir.2008). See <u>In re Qwest Commc'n Int'l. Inc.</u>, 450 F.3d 1179, 1184 n.3 (10th Cir. 2006). "The work-product doctrine is codified in Fed. R. Civ. P. 26(b)(3) and is therefore excepted from Fed. R. Evid. 501." <u>United States v. Ary</u>, 518 F.3d at 783 n.4.

Rule 26(b)(3) of the Federal Rules of Civil Procedure governs work-product issues. <u>See Frontier Ref. Inc. v. Gorman-Rupp Co., Inc.</u>, 136 F.3d 695, 702 n. 10 (10th Cir. 1998). Rule 26(b)(3)(A)-(B) states:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A)-(B)(emphasis in original).

"[T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." <u>Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs</u>, 241 F.Supp.2d 1342, 1358 (D.N.M. 2002)(Smith, M.J.)(citing <u>United States v. Nobles</u>, 422 U.S. at 238). The attorney-work product doctrine "is

intended only to guard against divulging the attorney's strategies and legal impressions. . . . " Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).   The work-product doctrine does not protect documents or other items that do not reflect the attorney's mental impressions.   See United States v. Nobles, 422 U.S. at 238 ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); In re Grand Jury Proceedings, 658 F.2d 782, 784-85 (10th Cir. 1981)("Such mental impressions are a prerequisite to the invocation of the work product doctrine.").

Analysis of whether a communication falls within the attorney-client privilege should precede any inquiry into whether the work-product protection applies.   See Upjohn Co. v. United States, 449 U.S. 383, 397 (1981).   The work-product protection is broader in scope and reach than the attorney-client privilege, because the privilege extends only to client communications, while the work-product protection encompasses much that has its source outside client communications.   See United States v. Nobles, 422 U.S. at 238.   Further, rule 26(b)(3) permits disclosure of documents and tangible things constituting attorney-work product only upon a showing of substantial need and inability to obtain the substantial equivalent without undue hardship.   See Fed. R. Civ. P. 26(b)(3).   The focus of the determination whether a document falls within the work-product protection is whether "the motivating purpose" behind its creation was to aid in litigation or possible future litigation.   In re Universal Serv. Fund Tel. Billing Practices Litig., 232 F.R.D. 669, 676 (D.Kan. 2005)(O'Hara, J.).

"'Ordinary work product generally refers to materials that are gathered at the request of an attorney in anticipation of litigation.   This type of work product receives less protection than opinion work product.   Opinion work product is, basically, the mental impressions of the

attorney.'"   Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 651 (D.N.M. 2007)(Browning, J.)(quoting Sinclair Oil Corp. v. Texaco, Inc., 208 F.R.D. 329, 334 (N.D. Okla. 2002)).   "The party asserting the work-product protection has the burden of demonstrating that it applies and that it has not been waived."   Anaya v. CBS Broad., Inc., 251 F.R.D. at 651 (citing Kovacs v. Hershey Co., No. 04-cv-01881, 2006 U.S. Dist. LEXIS 69342, 2006 WL 2781591, at *10 (D. Colo. Sept. 26, 2006)(Wiley, J.)).

For the work-product doctrine to apply, the asserting party must show that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative.   See Fed. R. Civ. P. 26(b)(3).   See also S.E.C. v. Goldstone, 301 F.R.D. 593, 650-53 (D.N.M. 2014)(Browning, J.).   "Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation."   Anaya v. CBS Broad., Inc., 251 F.R.D. at 651.   See Fox v. Cal. Sierra Fin. Servs., 120 F.R.D. 520, 524 (N.D. Cal.1988)(Woelflen, J.)("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.").   If the party asserting the work-product protection establishes entitlement to the protection, rule 26(b)(3) allows production of attorney-work product materials only upon a showing that the party seeking discovery has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."   Fed. R. Civ. P. 26(b)(3)(A).   "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances."   In re Qwest Commuc'ns Int'l, 450 F.3d 1179, 1186 (10th Cir. 2006); See generally S.E.C. v. Goldstone, 301 F.R.D. at 650-53 (Browning, J.).

## LAW REGARDING DISCOVERY CONSTITUTING AN UNDUE BURDEN ON A PRODUCING PARTY

Federal Rule of Civil Procedure 45(d)(1) provides:

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The court for the district where compliance is required must enforce this duty and impose an appropriate sanction -- which may include lost earnings and reasonable attorney's fees -- on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1)(emphasis added).  Rule 45(d)(3)(A) provides:

    (3) *Quashing or Modifying a Subpoena*.

        (A) When Required.  On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

            (i)      fails to allow a reasonable time to comply;

            (ii)     requires a person to comply beyond the geographical limits specified in Rule 45(c);

            (iii)    requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

            (iv)    subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).  "The party . . . moving to quash a subpoena has the burden to demonstrate good cause and/or privilege to be protected." Morales v. E.D. Etnyre & Co., 228 F.R.D. 694, 696 (D.N.M. 2005)(Browning, J.).  See Sentry Ins. v. Shivers, 164 F.R.D. 255, 256 (D. Kan. 1996)(Rushfelt, J.)("[A] party seeking a protective order also has the burden to show good cause for it.").  Generally, "only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena." Beach v. City of Olathe, Kan., No. 99–2217GTV, 2001 WL 1098032, at *1 (D. Kan. Sept. 17, 2001)(Waxse, J.)(citing Hertenstein v. Kimberly Home Health Care,

Inc., 189 F.R.D. 620, 635 (D. Kan. 1999)).

In this context, an undue burden can be judged by reference to a litany of factors. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005)(Chapman, J.). Specifically, an evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. See Travelers Indem. Co. v. Metropolitan Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005)(Smith, J.). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Travelers Indem. Co. v. Metropolitan Life Ins. Co., 228 F.R.D. at 113 (internal quotation marks and citations omitted).  Courts can give special weight to the burden on non-parties of producing documents to parties involved in litigation.  See Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir.1998)("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.");  Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41-42 (1st Cir. 2003).  See also Fed. R. Civ. P. 45(c)(2)(B) ("[A]n order to compel production shall protect any person who is not a party from significant expense. . . .").  The determination of issues of burden and of reasonableness is committed to the trial court's sound discretion.  See Clower v. GEICO Ins., 2013 WL 1897832 at *6 (D.N.M., April 16, 2013)(Browning, J.)(discussing Fed. R. Civ. P. 45(c), which is now Fed. R. Civ. P. 45(d)); 9A Wright & Miller, Federal Practice and Procedure § 2463, at 507 (3d ed.).   See generally S.E.C. v. Goldstone, 301 F.R.D. at 645-46 (Browning,  J.);  Morales  v.  E.D.  Etnyre  &  Co.,  228  F.R.D.  at  696  (Browning,

J.)(discussing Fed. R. Civ. P. 45(c), which is now Fed. R. Civ. P. 45(d)).

### LAW REGARDING RULE 16-109(C)(1) OF THE NEW MEXICO RULES OF PROFESSIONAL CONDUCT.

The local rules for the United States District Court for the District of New Mexico state: "The Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court Order."  D.N.M. LR-Civ. 83.9. Rule 16-109(C) of the New Mexico Rules of Professional Conduct provides:

> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known; or
> >
> > (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

NMRA Rule 16-109(C).  The commentary to the rule states: "However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client."  Rule 16-109(C) cmt. 8.  The New Mexico Supreme Court has disbarred attorneys pursuant to this rule where, in part, an attorney's use of information related to his prior representation of a client involved defrauding that client out of more than $100,000.00 in the course of representation regarding a will and testament.  See Matter of C'de Baca, 1989-NMSC-070, ¶¶ 1-7, 782 P.2d 1348.

### ANALYSIS

Ms. Martinez argues that the Court should quash the subpoena because the Bannister deposition is protected under the work-product doctrine, production of the deposition would cause her undue burden, and her production of the deposition would violate the New Mexico

Rules of Professional Conduct.  The Court disagrees with all three of Ms. Martinez' arguments because the Bannister deposition is not work product and can be produced without undue burden, and because its production does not implicate the Rules of Professional Conduct.  As such, Ms. Martinez must produce the Bannister deposition.

## I.       THE REQUESTED DEPOSITION IS NOT WORK PRODUCT.

The attorney-work product doctrine "is intended only to guard against divulging the attorney's strategies and legal impressions. . . ."  Resolution Trust Corp. v. Dabney, 73 F.3d at 266.  In its plainest sense, then, a deposition -- sworn testimony taken in front of numerous other persons -- cannot be the "attorney's strategies and legal impressions."  Resolution Trust Corp. v. Dabney, 73 F.3d at 266.  Also, if there is any work product in the testimony of a client being deposed, it is waived.  See Anaya v. CBS Broad., Inc., 2007 WL 2219394, at *5-8.  The Court thus concludes that the Bannister deposition from the prior case in not Ms. Martinez' work product.

## II.      PRODUCING THE BANNISTER DEPOSITION WOULD NOT CONSTITUTE AN UNDUE BURDEN.

As stated, "[w]hether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  Travelers Indem. Co. v. Metropolitan Life Ins. Co., 228 F.R.D. at 113 (internal quotation marks and citations omitted).  As the Court stated on the record at the hearing, the Bannister deposition transcript from the prior case bears on the content of Bannister's deposition testimony in this case.  See Tr. 2:4-22 (Court).  Cf. Travelers Indem. Co. v. Metropolitan Life Ins. Co., 228 F.R.D. at 113 ("Whether a subpoena imposes an undue burden depends upon . . .

relevance . . . .").   Further, the subpoena requesting the Bannister deposition does so with particularity and precision, and indeed only requests the production of the Bannister deposition. Cf. Travelers Indem. Co. v. Metropolitan Life Ins. Co., 228 F.R.D. at 113 ("Whether a subpoena imposes an undue burden depends upon . . . the breadth of the document request, the time period covered by it, [and] the particularity with which the documents are described . . . .").

Despite Ms. Martinez' alleged burden from production of the deposition, she has the document in her possession and in a readily available electronic format -- its first four pages were attached as an exhibit to her Motion.  See Deposition of Todd Bannister (March 24, 2010), filed July 18, 2016 (Doc. 138-2).   Unlike the scenarios where other courts have deemed production unduly burdensome -- such as where the production will result in a non-party's expenditure of significant resources -- the ready availability of, and access to, the deposition weighs heavily against the existence of a burden.  See Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38 at 41-42.   Considering these factors in their totality, the Court concludes that the burden involved in the deposition's production does not outweigh its relevance and importance to Abila's case.  The Court thus concludes that Ms. Martinez can produce the prior Bannister deposition without an undue burden to her.

## III.   PRODUCTION OF THE DEPOSITION WOULD NOT VIOLATE THE NEW MEXICO RULES OF PROFESSIONAL CONDUCT.

Unlike the facts of Matter of C'de Baca, 1989-NMSC-070, ¶¶ 1-7, 782 P.2d 1348, Ms. Martinez' compliance with the subpoena would gain her nothing at the expense of her former client.  Whereas in Matter of C'de Baca, an attorney knowingly defrauded a former client, whose financial assets he became familiar with during the course of their attorney/client relationship, Ms. Martinez is being asked to produce relevant, unprivileged information implicating a former

client's testimony in a deposition.  This production is not akin to the corruption that rule 16-109(C)(1) plainly seeks to eradicate.

Further, the Court cannot soundly conclude that production of the deposition constitutes the "use" of information that rule 16-109(C)(1) contemplates.  The rule is concerned with active endeavors by attorneys to better their own position.  An attorney in the position of Ms. Martinez -- who has been asked to produce a document in her files because it is relevant in a matter in which a former client is a defendant -- does not violate the rules of professional conduct by complying with the subpoena.  The Court thus concludes that the production of the deposition at issue here would not be a violation of the New Mexico Rules of Professional Conduct.

**IT IS ORDERED** that Jonlyn M. Martinez' Motion to Quash Subpoena, filed July 18, 2016 (Doc. 138), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*

Jack Bennett Jacks
Law Office of J.B. Jacks
Albuquerque, New Mexico

-- and --

Matthew Coyte
Coyte Law, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Luis E. Robles
Lindsay Drennan
Robles Rael & Anaya, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendants*